JACKSON, *ex dem.* LEWIS and Wife, *against* SCHUTZ.

A covenant       EJECTMENT for a farm in *Rhinebeck,* in the county of
or condition, in
a lease to a  *Dutchess,* tried before Mr. Justice *Yates,* at the *Dutchess*
person, his
heirs and as- circuit, in *September,* 1816. A verdict was taken for the
signs, for ever,
yielding and  plaintiff, by consent, subject to the opinion of the Court, on
paying a cer-
tain yearly   a case containing the following facts : The lessors proved
rent, &c. that
in case the les- their title, by a deed dated the 5th of *January,* 1790, from
see, or his   *Margaret Livingston,* widow of *Robert R. Livingston,* to
heirs, &c.
should be     *Gertrude,* the wife of the lessor, *Morgan Lewis.*
minded to dis-
pose of the pre-   The defendant gave in evidence a lease dated *Novem-*
mises, or any
part thereof, *ber* 21st, 1805, from the lessors of the plaintiff to *John G.*
he should give
to the lessor or *Hester,* by which the lessors, in consideration of the rents and
his heirs, &c.
the right of  covenants thereinafter mentioned, to be paid and kept, &c.
pre-emption,
or refusal of on the part of the lessee, " demised, set, and to farm let unto
buying, and
would not sell the party of the second part, his heirs, executors, adminis-
without his
leave first ob- trators and assigns, all that farm," &c. " To have and to
tained under
his hand and  hold the farm, &c. to the party of the second part, his *heirs,*
seal; and that
on every such executors, administrators and *assigns, forever,* to the proper
sale, with such use, benefit and behoof of the party of the second part, his
license, should
pay to the les- heirs, executors, administrators and assigns, during the time
sor the one
*tenth* of the aforesaid, yielding and paying therefor, yearly, and every
money for
which the pre- year, unto the parties of the first part, and the survivor of
mises were
sold; and that them, and the heirs and assigns of the said *Gertrude,* for
in case the les-
see did not   and during the term hereby granted, the yearly rent of eigh-
keep and per-
form all the  teen bushels of good merchantable winter wheat, on the
conditions, &c.
the lease and
the estate demised should cease, and be void, is a lawful and valid condition; and there being a
clause of re entry for a breach of the covenants, the lessor may bring ejectment to recover posses-
sion of the premises, on the forfeiture.

first day of *May*, yearly ; and, also, yielding, rendering, and performing to the said *M.* and *G.* or the survivor of them, &c. one day's work yearly, with a waggon, sled or plough, and an able man to drive, with horses or oxen, to perform, as in such case is reasonable ; and that in such manner, and at such time and place yearly, within six miles of the demised premises, as the said *M.* and *G.*, &c. shall, from time to time, appoint and direct : *Provided always, and these presents are upon this condition*, that if the said yearly rent, &c. or the one day's work, &c. shall be behind and unpaid, or unperformed, in part, or in all, for the space of twenty days next after, &c. or if the party of the second part *shall not observe, keep and perform the several articles, covenants and agreements particularly expressed on his part, to be observed, &c. that then these presents, and the estate hereby granted, &c. are to be void, determine and cease,"* &c. with a clause of re-entry, and of distress, &c. Then followed the covenants on the part of the lessee, viz : " That in case the party of the second part, his heirs, executors, administrators and assigns, or any of them, shall, at any time hereafter, be minded, and desirous to dispose of the said farm, land and premises herein before demised, or any part thereof, with the appurtenances, that then the party aforesaid of the second part, his executors, administrators or assigns, shall and will first offer and give the pre-emption, of buying and purchasing the same unto the said *M.* and *G.*, or the survivor of them, &c. and shall not, nor will sell the same, but first have leave, under the hand and seal of the said *M.* and *G.* &c. And on every such sale, so with leave as aforesaid obtained, shall pay to the said *M. & G.* &c. *a tenth* part of the money for which such premises are so sold or assigned," &c.

*Hester*, the lessee, by an endorsement on the back of the lease, dated the 1st of *September*, 1812, assigned the lease and premises to *David Wager*, without any license from the lessors, and without offering the pre-emption or refusal to them, or paying them the one tenth of the price of such assignment.

The defendant then produced receipts to *David Wager*, dated on the 22d of *January*, 1813, and of the 19th of *July*, 1814, in full for rent, signed by the reputed agents of the lessors.

The defendant offered to prove, that he had paid to *Alexander Thompson*, since deceased, and who was in the habit of receiving rents for the lessors, the one tenth part of the consideration money, for the assignment of the lease to *Wager*, but the Judge overruled the evidence. The lessors proved, by the agent who gave the receipt in 1814, that he was induced to settle with *D. Wager* for the rent, from seeing his name in the rent book kept by the former agent of the lessors, but that he had never communicated the fact to the lessors, nor did he believe that they were acquainted with it; that the witness had never exhibited any account to the lessors, or made any settlement with them. It was proved that *Wager* had agreed to sell the premises to the defendant for 1150 dollars, part of which he had paid; and that the defendant entered into possession of the premises in pursuance of that agreement, though *Wager* retained the lease and assignment until the whole money was paid: and in 1816, the defendant carried the rent wheat to the mill of the lessors, with a view to be acknowledged tenant, but the miller refused to accept the wheat.

This cause was argued in *May* term, 1818, by *J. Emott* for the plaintiff, and by *Oakley* for the defendant; and again, in *January* term last, by *F. A. Livingston* and *M. Lewis* for the plaintiff, and *Oakley* (*A. G.*) for the defendant.

*For the plaintiff*, it was contended: 1. That the lease or instrument under which the defendant claimed title, did not convey an estate in fee simple, or the highest estate known in the law, transferring the whole interest of the grantor to the grantee, to be held in absolute demesne as of fee; but that it was rather a sort of base or qualified fee. That the parties intended to establish the relationship of landlord and tenant between them, by this indenture, was evident from the language of the instrument: The words are "demise, set, and to farm let," which always denote a tenancy, and not a fee simple absolute; the grant is subjected to various reservations: a *rent charge*, or annual rent; with a power of distress; a *rent service*, or certain personal services to be performed by the grantee; a right of pre-emption on sale; a tenth of the purchase money on alienation; a prohibition

to aliene without license; and, lastly, an agreement between the parties that each and every of these reservations shall be a condition, on the failure of which a forfeiture shall accrue, and the grantor have a right of re-entry. Here, then, are all the requisites to create a tenancy; and if a tenancy, there must be, if not an *actual*, at least, a *potential* reversion in the grantor. The only ground for presuming that this lease created an estate in fee simple in the first grantee, must be the words of *inheritance* and *perpetuity* contained in it. Now, though these words are essential, in a common law assurance, to create an estate in fee simple, yet they do not necessarily, *ex vi termini*, vest such an interest; for they may be so qualified as to give the deed the effect of *letting to farm* only. There is no valid objection to this species of letting in fee; and that it has existed in England from the earliest times, there can be no doubt. (*Termes de Ley*, 384. *Co. Litt.* 143. *a.* 143. *b.* Note, 144. *a.* —*Doug.* 627. 2 *Co.* 54. *Cro. Eliz.* 505.) Indeed, Sir *William Blackstone*, (2 *Bl. Comm.* 43.) in treating of rents, observes, that "*a fee-farm rent*" "is only letting lands to farm *in fee simple*, instead of the usual method for life or years;" and he defines it to be "a rent charge issuing out of an estate in fee, of, at least, one fourth of the value of the lands, at the time of its reservation;" though, as *Hargrave* observes, the quantum of rent is not essential to create a fee-farm. But whether such estates exist in England or not, is perfectly immaterial, for it is sufficient for our purpose that they exist here, and have been recognized by various acts of the legislature. (1 *N. R. L.* 73. Sess. 10. ch. 37. s. 2. 27 *Hen.* VIII. c. 10. 1 *N. R. L.* 438. Sess. 36. ch. 63. s. 17. 32 *Hen.* VIII. ch. 37.) Leases or grants in fee, reserving rents, have been in use in *New-York*, since the first period of its history as an *English* colony. The act of the 9th of *April*, 1805, (28th sess. ch. 98) is declaratory of the law of this state on the subject. It says, "whereas it has been doubted, whether the provisions contained in the act, entitled, 'an act to enable grantees of reversions to take advantage of the conditions to be performed by lessees,' extend to any but assignees of reversions dependent on estates for life or years; and whereas leases or grants in fee,

reserving rents, have long since been in use in this state, and to remove all doubts respecting the true construction of the said act," &c. it is enacted, " that all the provisions of the said act, and the remedies thereby given, shall be continued to extend as well to grants or leases in fee reserving rents," &c. In *Doe* v. *Carter*, (8 *Term Rep.* 57. 60,) Lord *Kenyon* says, " *modus et conventio vincunt legem* ; though that maxim is to be taken with some qualification. For a grantor when he conveys an estate in fee cannot annex a condition to his grant not to aliene, nor when he conveys an estate tail, a condition not to bar the entail. Such restrictions are imposed to prevent perpetuities ; but short of that restriction, both parties to a contract may model it in what manner they please." This general doctrine will apply to a lease of this kind, as well as to any other.

At common law, the tenant could make a feoffment of a part, or of the whole of his lands, to be held of himself, thereby creating a *mesnalty* between the *tenant paravail*, and the *Chief Lord*, to the injury of the latter. To remedy this mischief, it was declared by the *great charter* of *Hen.* III. ch. 32. that no freeman should thenceforth give or sell any more of his land, but so that of the *residue*, the lord of the fee might have the services due to him, and which belonged to the fee. And so the law continued until the 18th *Edw.* I. when wearied with the questions perpetually arising as to the competency of the lands reserved, to answer the services to the *Chief Lords*, the statute of *quia emptores* was passed, at *their* instance, and for *their* benefit, enacting, that " thenceforth it shall be lawful to every freeman to sell, at his own pleasure, his lands and tenements, or part of them, so that the feoffee shall hold the same lands or tenements of the *Chief Lord* of the same fee, by such service and customs as his feoffor held before." From the last clause of this act, *Littleton, Brooke, Coke, and others*, (*Co. Litt.* sec. 215, 216. 223. *a.* *Bro. Cond.* sec. 57.) have drawn the inference, that since the statute of *quia emptores;* a condition not to aliene in a conveyance in fee, is void ; because the statute having transferred the tenure from the *mesne* to the *Chief Lord*, no possibility of reversion remains in the *mesne* lord, whereby, on a forfeiture, the estate may revert to him;

evidently referring to the feudal common law tenures, and not to such as might be created on stipulated services and renders. But these same writers, afterwards, admit, that collateral and special conditions are valid ; (*Co. Litt.* 223. *a. Bro. Cond.* 135.) and *Brooke* (*Cond.* 57.) (*a.*) states a case, (13 *Hen.* IV.) in which a condition not to aliene in a conveyance in fee, was held good. And Lord *Coke*, pursuing the same principle, that the condition is void, for want of tenure between feoffer and feoffee, is obliged to admit, that to produce the effect, the feoffor must part with his *whole* interest, and must restrain the *whole* power of the feoffee. (*Co. Litt.* 223. *a. b.*) In the present case, there is a *tenure* created by express contract; there is, moreover, a *rent service* which always creates a *tenure.* (*Co. Litt.* 142. *a.* 143. *a.*) Besides, the rent is connected with *prædial* service, and the land is made liable for both rent and service, to a right of preemption, and to the payment of a tenth on alienation. Can it be said, then, that the grantor has parted with his whole interest, or that he has not retained enough to support the possibility, at least, of a reversion? Again; the statute being made for the benefit of the *Chief Lords*, might be waived by their consent ; and the lease is evidence. in this case, of the consent of the parties interested to waive it, and to allow the restraint on alienation.

But the statute of *quia emptores* never was in force in this state. Its object was to support the *military tenures*,

(*a*) The case in *Brooke* was this: Note by *Yelverton*, " That if a man lease lands for a term of years, on condition that he shall not grant over his estate, this is good, by reason of a reversion remaining in the lessor. The contrary of a feoffment on such condition, or that the feoffee shall not commit waste, for no right or interest remains in the feoffor."

*Fulthorp.* A man gives in tail, on condition that the donee shall not. aliene or discontinue, this is a good condition, which *Ascue* granted and agreed to ; (33 lib. *Ass.* p. 11.) and contrary of a fee simple ; yet, it is said, that in 13 *Hen.* IV., in *ejectione fermœ* had before *Paston*, the law is contrary, as appears.

*Bro.* 135. Condition that *J. N.*, who is enfeoffed in fee, shall not aliene to any one, is not valid ; contrary, that he shall not aliene to *W. S.* But a gift in tail, upon condition that the tenant shall aliene to no one, is good, by reason of the reversion in the donor. Per *Fairfax and Hussey.*

ALBANY,
August, 1820.

JACKSON
v.
SCHUTZ.

by securing to the *Chief Lords* of fees, their *escheats, wardships, marriages,* &c.; and these were all abolished by the 12 *Car.* II. in 1660, reserving only the tenure of free and common socage, *frankalmoigne, copyholds,* and the *honorary services of grand serjeantry.* But, at that time, *New-York* was a *Dutch* colony, and did not become a *British* colony until the 30th of *August,* 1664, so that the statute could not apply here.

[SPENCER, Ch. J. We never supposed, that the statute of *quia emptores* existed here; though it might, perhaps, be resorted to by way of analogy to our *act concerning tenures,* the language of which is taken from the *English* statutes.]

The *act concerning tenures,* appears to be without object, and without effect. The first clause seems to be an attempt to revive fœdal tenures, while the next section re-enacts the statute of 12 *Car.* II. abolishing such tenures. Those statutes can have no effect here; there is nothing on which they can operate. Here are neither *lords* nor *knights.* Any other tenure but what is purely *allodial,* is repugnant to the spirit and principles of our free government. Indeed, the sixth section of the act declares, that tenures upon gifts, grants, and conveyances heretofore made, or hereafter to be made by any letters patent under the great seal of the state, shall be, and remain *allodial,* and not feudal; while lands held by grants from the crown, previous to the 4th of *July,* 1776, are declared to be held in *free and common socage;* and the act provides, that nothing in it shall be construed to take away or discharge any rents certain, or services incidental to tenure in common socage. Why this distinction was made, it is not easy to imagine, unless it was to give colour of right to a demand of the *quit-rents,* reserved to the crown on grants made under its authority, though previously taken away by the constitution, (35th article,) from the 19th of *April,* 1775, with the other *prerogatives* of the crown. *Fealty* was not only an incident to, but inseparable from all *tenures.* (*Co. Litt.* 93. *a.*) It was due to the *king,* in his capacity as *Lord Paramount* of the soil; and is very distinct from that *allegiance* which is due to him as head of the government.

Though *fines for alienation* are abolished, yet there is nothing in the act against the *tenths*, on sales by lessees. Fines for alienation were strictly fœdal. The framers of the act supposed that the feudal tenures did exist here. A statute abolishing all right and claim of *purveyance* was passed ; yet *purveyance*, which was a royal prerogative, could not exist here. (Sess. 10. ch. 2.) The whole language of the statute refers to feudal rights and estates, and it was intended to abolish all feudal services. But, admitting even the right of the state to the *quit rents.* as a forfeited royalty, and furnishing the only remaining link in the chain of *feudal* connection between *lord and vassal*, it cannot affect lands on which no quit rents have been reserved. These must be purely *allodial,* and free from all influence of the statute of *quia emptores*, or its offspring, the *statute concerning tenures*, both deriving their common origin from the feudal system. But these acts never were intended to touch private contracts. Could not the parties, before the statute of *quia emptores*, in *England*, have annexed such a condition as this to a grant in fee ? It does not take away all power of alienation. If a feoffment in fee, be on condition that the feoffee shall not infeoff *J. S.*, or his heirs, &c. it is good. (*Co. Litt.* 223. a. 223. b.*)

Here, then, is a lease, *letting to farm in fee simple*, to which a lawful condition is annexed, and there is nothing unreasonable in the condition. Here is a perpetual lease of a valuable farm in a well settled country, worth above two thousand dollars, at a rent of about 27 dollars a year. The lessor must have had in view some compensation beyond the mere rent, and it is only by a covenant of this kind, that a bad tenant can be kept out, who might, by his bad management, injure the farm so as to diminish the value of the one *tenth* of the sale.

*For the defendant*, it was argued that the covenants in this lease, so far as they were a restraint upon the power of alienation, were repugnant and void : Undeniably so, in the case of a grant in fee simple absolute. And that this is a *lease* in fee, makes no difference. *Fines* for alienation are void ; (*Shep. Touch.* ch. 6. 129. *Co. Litt. s.* 360, 223. a. 3 *Comyn Dig.* tit. *Condition,* D. 5. *Cruise Dig. tit.*

13. ch. 1. s. 21. 24. *Bac. Abr. Condition,* L.) and this without any distinction between leases, or absolute grants in fee. All conditions in restraint of alienation, though not void, are still to be construed with great strictness, and in favour of the lessee. (*Cruise Dig. tit.* 13. ch. 1. s. 35. s. 36. 460. 120. *Comyn's* 3 *Dig. Cond.* (D. 7.) *Shep Touch.* ch. 6. 158.) These *tenths* on sales are in their nature a fine on alienation, and come within the doctrine in regard to such fines. Though the fine may be reasonable in this case, yet the Court will look at the principle and the consequences of such covenants. This is not a covenant that the grantee of the lessee, shall pay a *tenth* of the purchase money to the lessor; but that the grantor, or lessee himself, shall pay it; and if he neglects to do so, his grant becomes void. Can a lessee or party, by his own act, or omission to perform a covenant by paying a *tenth* of the purchase money which he receives to his lessor, defeat the very estate conveyed by him, and for which he has received the full consideration? The covenant is absurd, as it operates to create a forfeiture of the lease and estate, after it has been aliened to another.

But the question is, what estate passed by this lease under the laws of this state? Was it an estate in fee simple or not? An estate in fee simple is where a person holds lands to him and his heirs for ever. (*Co. Litt.* 1. *a.*) It is true that the word *fee* is derived from the feudal law. But we must take the word as it is now universally understood. It is quite unnecessary to go back to the history of the feudal tenures. Here is a grant to a man and to his heirs and assigns for ever, without any reservation of any part of the interest, to create a reversion. There is a certain condition for which the statute meant to provide a remedy, and such estates in fee simple are recognized. Suppose there had been no statute giving a remedy by ejectment in case of non-payment of the rent, how could the lessor ever get possession of the land for the rent? The whole interest of the lessor is conveyed, and his only remedy for a breach of the condition is under the statute. According to our law and the principles and spirit of our government, this must be deemed a fee simple, or the highest estate in law. If the condition is performed, it remains to the grantee and his heirs and assigns

for ever. If then it is an estate in fee simple, the question recurs, whether if the grantor impose a condition that the grantee shall not aliene without his consent, such condition is not repugnant and void. That it is so, will appear from the authorities which have been cited. (*Bac. Abr. tit. Grant*, (I.) 393.) Whether the statute of *Quia Emplores*, (2 *Reeve's Hist. of Eng. Law*, 223. 2 *Inst.* 500) was ever a law of *New-York* or not, it is unnecessary to inquire. It is referred to merely in aid of the construction to be given to our act concerning tenures. A practical construction must be given to that act. It was intended to encourage alienation, and thereby promote agriculture, and to give to every man the complete ownership of land, unclogged with the feudal burdens, services and restraints. It must be supposed that the legislature had some object in view when they passed this act. If by the principles of the common law, or by the existing laws of this state, all feudal services and clogs were abolished, what object could remain on which the act was to operate, but contracts and conditions in restraint of alienation ? There are many covenants or conditions which the law will not support : every illegal condition, whether precedent or subsequent, annexed to an estate, is void. So a condition against the policy of the law and the principles of the government is void. (*Shep. Touch.* 132.) So a condition in restraint of marriage. (4 *Burr.* 2225.) So if lands are given in fee tail, on condition that the tenant shall not suffer a common recovery. (*Shep. Touch.* 132.)

That this is a beneficial mode of conveying lands may well be questioned, but it is unnecessary to discuss that point.

PLATT, J. delivered the opinion of the Court. It was proved that *Hester*, the lessee, by an endorsement on the original lease, assigned the premises to one *David Wager*, on the 1st day of *September*, 1812, without license ; and without offering pre-emption to the lessors ; and without paying one tenth of the price of such assignment.

An attempt was made to prove by the subsequent receipt of rents, that the forfeiture had been waived: but that ground

of defence failed ; because there was no evidence that the lessors were then *conusant* of the assignment. We are, therefore, compelled to decide upon the validity and effect of the covenant before recited.

It is contended on the part of the defendant, (who holds under *Wager*,) 1st. that this being a lease *in fee*, to *Hester* and his heirs and assigns, according to the principles of the common law, the covenant *not to assign*, &c. is a condition *repugnant to the grant, and therefore void.* 2dly. That the covenant is annulled, and the lessee had an *absolute* and *unqualified* right to assign, by virtue of the statute " concerning tenures," passed 20th of *February* 1787; (1 vol. *J. & V.* 67 :) and which has twice since been incorporated among the revised statutes.

The first ground of objection is, in my judgment, without foundation ; because, this is a *"fee simple conditional"* at the common law ; or a fee simple, subject to be defeated upon a " condition subsequent," by the failure or non-performance of which, an estate already vested may be defeated. (2 *Bl. Com.* 154. *Co. Lit.* 201.) If the condition had been *general* and *absolute*, "*not to aliene*," it would have been *necessarily repugnant*, and therefore *void*. But here, there is no such repugnance. It is a grant to the lessee and his heirs and assigns ; but coupled with a condition, that if he is minded to sell, he shall first offer the premises to his landlord, or obtain his license to assign : and that upon any assignment made by the lessee, he shall pay one tenth of the price to his landlord ; or that the estate shall be defeated. A condition upon a feoffment *in fee*, not to aliene, is void. (*Co. Lit.* 223. *a.* 10 *Co.* 38. *b.*) But the grantee may be restrained from assigning for *a particular time* ; or from alienating *to a particular person.* (2 *Leon.* 82. 3 *Leon.* 182. *Co. Lit.* 223. *a. Bac. Ab. tit. Condition,* L.) So a *condition* that the grant shall be void, if the grantee becomes bankrupt, is a good condition. (*Doe, ex dem. Mitchinson,* v. *Carter*, 8 *Term Rep.* 60—64.) A *condition* in a grant *in fee simple* that the deed should be void, in case the grantee assigned to a *Musselman* or a *Pagan*, or to a

blacksmith or a distiller, would be a good condition, and not repugnant to the grant.

If the lessee in this case had, in good faith, offered the pre-emption to his landlord ; and upon a refusal to purchase by the landlord, the lessee had, *without license,* aliened to a stranger, on paying or tendering to the landlord one-tenth of the price, it would present a different question from that now before us. There would be a strong ground to insist, that a condition *not to aliene,* and a condition *not to aliene without license of the grantor,* would be of the same legal import, and equally repugnant to a grant in fee simple.

The " act concerning tenures," (sec. 1.) declares, " that it shall forever hereafter be lawful for every freeholder to give, sell, or aliene the lands or tenements whereof he or she is, or at any time hereafter shall be, seized in fee simple, or any part thereof, at his or her pleasure, so always, that the purchaser shall hold the lands or tenements so given, sold, or aliened, of the chief lord, if there be any, of the same fee, by the same services and customs by which the person or persons making such gift, sale, or *alienation, before held the same,*" &c. In order to interpret this statute, it is necessary to examine the history of the law of tenures. According to the *feudal system,* which is the chief origin of *English* tenures, neither the tenant *in capite,* (who held immediately of the king,) nor the tenant *paravail,* (who held of the tenant *in capite,*) had originally a right to aliene or devise the *feud,* without consent of the immediate lord of whom he held. (2 *Bl. Com.* 57—72.) By *magna charta,* and the statute of *Westminster,* (or *quia emptores,* &c. 18th *Ed.* I. ch. 1.) te-nants *paravail* were authorized to aliene their whole estate, to be holden of the same lord, as they themselves held it before. But the king's tenants *in capite* were not included in the general words of those statutes, and could not aliene without license ; and, if they did presume to do so, it was originally a cause of forfeiture. And, afterwards, by the sta-tute of *Edw.* III. ch. 12., that severity was mitigated, so that the tenant *in capite* might purchase a license for one-third of the yearly value of the land, and if he sold without license, he should pay a full year's value, as a *fine for alienation.* (2 *Bl. Com.* 72. 2 *Inst.* 66.) By the 12th *Car.* II. ch.

VOL. XVIII. 24

24. tenures by knight-service (or military feuds) were converted into *free and common socage;* that is, an uncertain service at the discretion of his lord, into a fixed and certain rent or service. (2 *Bl. Com.* 77. 79.) *Free and common socage* could not be of the king *immediately,* but of a mesne lord, and of the king as lord paramount. (*Ibid.* 86.) The statute of *Westminster,* 18 *Edw.* I. ch. 1. (or *quia emptores,* &c.) directs, " that upon all sales or feoffments of land, the feoffee shall hold the same, not of the immediate feoffor, but of the *chief lord* of the fee, of whom such feoffor himself held it." (*Ibid.* 91.) The object of which was to secure to the chief lord (who was tenant *in capite*) the benefits of escheats, wardship, and other incidents, which before fell into the hands of the *mesne* lords. By the statute of 12 *Car.* II. ch. 24. *fines for alienation* were abolished.

In the revised edition of the statutes of this state (by *Jones* and *Varrick*) in 1787, such parts of those old *English* statutes as were deemed applicable to our polity, were collected and consolidated in our " act concerning tenures." The object of the statute now under consideration, was not to *alter* the law, but to *adopt,* in express terms, such of the *English* statutes relating to tenures, as were deemed to be in force here. It was at that era, when our legislature drew the line of discrimination, and either *re-enacted* or *repealed* all the *British* statutes that extended to the colony of *New-York.* The design and effect of the 1st section of the act, was to regulate " *subinfeudations,*" so as to empower a feoffee or tenant *paravail* to aliene, which, at common law, originally he could not do, without express license, although no prohibition or condition of that kind was expressed in the feoffment. But the legislature never intended to deprive the parties of the power, by mutual consent, of framing such conditions as were before lawful.

Before the statute of *quia emptores,* the tenant could not aliene without express license, or stipulation for that purpose. The object of that statute, and of the 1st section of our " act concerning tenures," was to reverse the old rule, so that the right of alienation was made incident to the grant, and followed of course, wherever a fee simple estate was granted, unless the parties qualify that right by an express

stipulation. And provided the condition be not unlawful, nor impossible, nor repugnant, the parties have a right to bargain as they please.

The conditions stipulated in this lease are, that the lessors should have a pre-emptive right, and that, on every sale, they should receive one-tenth of the purchase money. These conditions were neither unlawful, impossible, nor repugnant; they formed an essential part of the consideration for the grant; and we may reasonably presume, that from a regard to these covenants, the stipulated rents are lower than would otherwise have been agreed on. Therefore, as the lessee failed to comply with those conditions, the estate derived under the lease has become void, and the plaintiff is entitled to judgment.

SPENCER, Ch. J. said, that although he concurred in the result of the opinion delivered by Mr. Justice *Platt*, that the plaintiff was entitled to judgment, on the ground that the condition giving the lessor a right of pre-emption, is a lawful condition; and not having been complied with, a forfeiture had been incurred; yet, on the other parts of the case, it was not necessary, nor did he mean to express any opinion.

Judgment for the plaintiff.