ELIZABETH MANIERRE *et al. vs.* WILLIAM BRENTON WELLING *et al.*

JANUARY 11, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Wills. Restraint on Alienation.*

Testatrix, desiring to preserve her family seat as a home for her children, by testamentary devise directed her executor to have the farm laid out in as many plots, approximately equal to each other, as there should be children or issue of deceased children then surviving her, and to apportion the plots among such persons, and devised one of said plots to each of such children (or issue of deceased children, as tenants in common), in accordance with the apportionment of the executor, and provided that "all the devises of portions of my (farms) are made upon the condition that if any of my children or grandchildren shall voluntarily or involuntarily alienate or devise the portion of said lands set apart to him or to her other than to some descendant of mine (except for life to the wife or husband of some descendant) while such descendant may be living and without the consent of all my descendants, who shall at the time be of full age and competent to convey and devise real property, in such event the interest of such child or grandchild therein shall cease and be determined and such estate shall thereupon vest in my other descendants then living *per stirpes* and not *per capita*."

*Held,* that the words "while such descendant may be living" following the parenthesis should be read as if included within the parenthesis, as referring

to the last word "descendant" within the parenthesis, so as to read "except for life to the wife or husband of some descendant while such descendant may be living."

*Held*, further, that the effect of the clause was to devise to the persons therein named, as tenants in common, an estate in fee subject to the power given the executor to divide the same, and subject to the restrictions upon alienation of the portions so divided.

(2) *Powers in Trust.*

*Held*, further, that no estate was devised to the executor but only a power of division and allotment, which was a power in trust.

(3) *Rule Against Perpetuities.*

*Held*, further, that the restriction was placed upon the first devisees only, and as the breach of the condition must occur and the limitation dependent thereon must vest, if at all, within the lifetime or at the death of persons in being at decease of testatrix, the restriction did not violate the rule against perpetuities.

(4) *Restraint on Alienation.*

The fact that a restriction upon alienation is limited in duration does not of itself make such restraint valid, if it is otherwise unreasonable or so general in its scope and effect as to operate as a substantially absolute restraint upon alienation for such limited time.

*Held*, further, that the restraints upon voluntary alienation were so general and so nearly absolute in their character that they were invalid, and that the law was well settled that such restraints as testatrix attempted to provide against involuntary alienation, through proceedings by creditors of the devisees, were also void.

(5) *Wills. General Intent.*

*Held*, further, that the restraint on alienation was only incidental to the general scheme of testatrix to provide that her children, or the issue of any deceased child, should have parts of these estates, approximately equal in area, that they might have neighboring sites for their homes. Such general intention therefore should be made effective, and such incidental feature as was held to be void should be disregarded.

(6) *Wills. Separation of Valid and Invalid Clauses.*

Where invalid portions of a will can be separated from that which is valid, without violence to the general testamentary scheme, the invalid clauses will be disregarded and those which are valid, upheld.

*Held*, further, that the clause was valid as devises of the real estate free from the restraint upon alienation.

(7) *Power of Alienation.*

The power or right of alienation includes the power or right to dispose of property held in fee in such manner as the owner sees fit, by gift, settlement in trust, by will, or by sale, or other mode of conveyance, so that the purpose of the owner, whether of benevolence or to obtain value therefor, should be carried out. As a further incident to such power such an estate should be

subject to the owner's debts so that his creditors may be enabled to avail themselves thereof through proper proceedings.

Bill in Equity, for partition. Certified to the Supreme Court under Gen. Laws, 1909, cap. 298, § 5.

Parkhurst, J. This is a bill for the partition of certain real estate in Rhode Island, of which Katharine C. Welling died seized.

The decision of the case involves the legal effect of certain provisions of the will of said Katharine C. Welling and the codicil thereto, and questions as to this have been certified by the Superior Court to this court under the provisions of General Laws, of 1909, chap. 298, § 5. The provisions of the will and codicil involved are as follows:

### SECOND AND THIRD CLAUSES OF WILL.

" *Second.* Whereas, I desire to perpetuate, as far as I can, the affectionate relations which have always subsisted between my children, and I am satisfied that the most effectual means to that end is to provide for them and their families, sites for country homes in proximity to each other which will be endeared to them by associations with their childhood and their parents and hence wish that my homestead and family seat known as Pojac Point Farm in said town of North Kingstown, Rhode Island may continue to be preserved in the future exclusively as such country homes for my children and grandchildren; accordingly I hereby direct my executors or whichever shall qualify as such within two months after probate of my will to have said Pojac Point Farm laid out in as many plots, approximately equal to each other in area, as there shall be children of mine then surviving me and children of mine deceased leaving issue and within six months thereafter to apportion and allot the said plots among my said surviving children and the families of such as may be deceased leaving issue so that each of my said surviving children and the family of each such deceased child shall have one of such plots and I give and devise one of said plots to each of my said surviving children

and one of said plots to the child (or children as tenants in common if there be more than one) of each child of mine that may be deceased leaving issue in accordance with the apportionment made by my said executors, as aforesaid. And I further direct that said plots shall be laid out in such form, location and containing such buildings or other improvements existing at my decease, and shall be allotted and apportioned to and among said devisees as my executors or executor, in their or his discretion, may determine to be most suitable and equitable. In making such apportionment I authorize and recommend, but do not direct, that my executors endeavor to obtain from all my surviving children a mutual agreement as to the apportionment of said lands, and if such agreement be made within four months after the probate of my will, that my executors, or the one who may qualify, apportion said land in accordance with such agreement; but, if such agreement be not made among all my surviving children within said period, then, that my said executors or executor make such allotment as they or he shall deem proper.

"And I further provide and declare, that all the devises hereinabove made of portions of my Pojac Point Farm, and also those hereinafter made in the *third clause* of my will, of my farm called Tanglewood, are made upon the condition that, if any of my children or grandchildren shall voluntarily or involuntarily alienate or devise the portion of said lands other than to some descendant of mine (except for life to the wife or husband of some descendant) while such descendant may be living and without the consent of all my descendants, in such event, the interest of such child or grand child therein shall cease and be determined, and such estate shall, thereupon, vest in my other descendants then living, per stirpes and not per capita.

"*Third.* The farm known as 'Tanglewood,' purchased by me and adjoining my said homestead farm and likewise situated in said town of North Kingstown, I direct my said executors to allot and apportion among my children and the families of those deceased leaving issue in the same manner as I have directed in the case of Pojac Point Farm, making the same

recommendations and giving my said executors the same powers with respect thereto and I give and devise one of the plots so laid out to each of my said surviving children, and one of said plots to the child (or children if more than one, as tenants in common) of each child of mine that may be deceased leaving issue in accordance with the apportionment made by my said executors as aforesaid, subject to the condition as to alienation set forth in the foregoing *second clause* of my will."

### FIRST CLAUSE OF CODICIL.

"*First.* I alter and amend the second paragraph of the second clause of my said last will and testament so as to read as follows, to wit:

"And I further provide and declare that all the devises hereinabove made of portions of my Pojac Point Farm, and also those hereinafter made in the third clause of my will of my farm called Tanglewood, are made upon the condition that if any of my children or grandchildren shall voluntarily or involuntarily alienate or devise the portion of said lands set apart to him or her other than to some descendant of mine (except for life to the wife or husband of some descendant) while such descendant may be living and without the consent of all my descendants, who shall at the time be of full age and competent to convey and devise real property, in such event the interest of such child or grandchild therein shall cease and be determined and such estate shall thereupon vest in my other descendants then living per stirpes and not per capita."

### RESIDUARY CLAUSE OF WILL.

"*Fifth.* All the rest, residue and remainder of my estate of every description and wherever situated, including all property over which I have any power of appointment or disposition by will, I give, devise, bequeath and appoint in as many equal shares as there shall be children of mine surviving me, and children of mine deceased, leaving issue surviving me, as follows: to my son, William Brenton Welling, one equal share; to my daughter Emily Greene, wife of J. Noble Hayes, Esquire,

of New York, one equal share; to my executors (or executor, if but one,) one equal share, in trust however, to receive the rents, issues, profits and income thereof, and apply the same to the use of my daughter Katherine G. Welling, during her natural life and on her death to convey and transfer the said share to such person or persons as my said daughter, Katherine, may, by her will, appoint, and, in default of such will, to such persons as would take the same, had my said daughter died intestate seized and possessed of said share, absolutely: to my said son Richard Ward Greene Welling, one equal share, and to my daughter Elizabeth H. wife of Charles Manierre, Esquire, of New York, one equal share; to my daughter Mary Hart, wife of Heinrich Baltz, Esquire, of Philadelphia, Pennsylvania, one equal share."

The questions certified to this court are as follows:

"1.   Is the restraint on alienation imposed by the second paragraph of clause 'Second' of the will of said Katherine C. Welling as amended by the 'First' clause of the codicil, valid or invalid?

"2.   If the restraint on alienation imposed by the second paragraph of clause 'Second' of the will of said Katharine C. Welling as amended by the 'First' clause of the codicil is invalid, are the 'Second' and 'Third' clauses of said will as amended by the 'First' clause of said codicil thereby rendered wholly invalid and of no effect, or are said clauses as thus amended valid as a devise of the real estate therein mentioned free from the restraint upon alienation?

"3.   If the 'Second' and 'Third' clauses of the will of said Katharine C. Welling as amended by the 'First' clause of the codicil are wholly invalid and of no effect, do the 'Pojac Point Farm' and the 'Tanglewood Estate' pass under the residuary clause of said will or do they descend as an intestate estate?"

These are questions merely of legal interpretation to be answered by reference to the will and codicil alone, and no other matters can properly be considered.

(1)   As preliminary to the discussion of these questions, we first proceed to a construction of the "Second" and "Third"

clauses of the will, as to the nature and extent of the estate thereby intended by the testatrix to be devised.   We are of the opinion that it was the intention of the testatrix to devise and that she did thereby devise, to the persons, named therein, as tenants in common, an estate in fee in both the "Pojac Point Farm" and the "Tanglewood Farm;" subject to the power given to her executors to divide the same, and subject to the restrictions upon alienation of the portions thereof so divided. The intention that her children living at her decease and the children living, at her decease, of any child of hers not then living, should have the whole of these estates, and her reasons therefor and hopes and desires in connection therewith are fully set forth in the language of the devises.   No estate in these lands is devised to her executors, but she only gives them the power of division and allotment, which is construed as a power in trust.

(2)     In the case of *Henderson* v. *Henderson,* 113  N. Y. 1, the will of H., after authorizing and directing his executors to "partition, divide and apportion" his residuary estate among his children living at the time of such partition, and the issue of any child or children who had died leaving issue, provided as follows: "And I do hereby give, devise and bequeath to each of my said children, the share or portion of my said estate so to be partitioned, divided and apportioned to them respectively as aforesaid.  .  .  .  If any of my children shall die without leaving issue before such partition and division shall be made, then I give the portion of such deceased child equally to the brothers and sisters of such deceased child.  .  .  .  If any of my children shall die leaving issue, then the child or children, (who shall be living at the time of such partition), of such deceased child of mine shall take and have the share or portion which the parent would have if living.  .  .  .  It is my will that my executor make the partition as soon after my decease as practicable, having reference to the condition of my estate, but as he may find it necessary to realize upon securities and sell and convert into money both real and personal property,  .  .  . which he may not be able speedily to make without sacrifice

and loss to my estate, he shall not be compelled to make such partition, &c., until after the lapse of five years from the probate of this will."

All the testator's children were living and of full age at the time of his decease. In an action for the construction of the will, held, that no valid express trust was created by the will, and the legal title to the real estate vested in the testator's children at his death, subject to the power given the executor to partition; that the direction to partition, &c., although ineffectual to create a valid trust, could be upheld as a power in trust. Also held that no unlawful perpetuity was created by authorizing the executor to delay partitioning the estate for five years, as the power of sale was not suspended.

"The powers of partition and of sale being valid, however, the children of the testator took their interests at his death subject to their exercise, and hence, one or more of them could not maintain any compulsory partition proceedings, pending the existence of the right in the executor to exercise his powers. Although there is no present express devise to the children of the residuary estate, but only the direction to the executor to divide and apportion it among them, if they were alive at the time of distribution, we think their interests must be considered as having vested at the testator's death. Such would be the result from the fact that no valid trust estate has been created in the executors and such would be fairly inferable as an intention of the testator from his language in the sixth clause, where he says: 'I do hereby give &c., to each of my said children the share or portion of my estate so to be partitioned, &c., as aforesaid.' The time of conveyance of the realty to and of the distribution of the personalty among the children, is postponed, only, but that is not inconsistent with the vesting of the undivided shares. We regard that language as disposing of the suggestion that time was of the substance of the gift."

It will be seen that the above case closely resembles the case at bar in this aspect. And see also, *Mandlebaum* v. *McDonell*, 29 Mich. 78, 84, *et seq.*; *Bennett* v. *Chapin*, 77 Mich. 526; *Johnson* v. *Preston*, 226 Ill. 447, 458.

We will proceed to the consideration of the first question submitted, viz.: "1.   Is the restraint on alienation imposed by the second paragraph of clause 'second' of the will of said Katharine C. Welling as amended by the First' clause of the codicil valid or invalid?"

The respondents Hayes, having demurred to the bill and thereby raised the questions certified, contend that said restraint is invalid:

"A.   Because such a restraint is repugnant to the devise of the fee-simple estate as made by the granting part of said clause.

"B.   Because the restraint lasts for a period beyond that allowed by the rule against perpetuities, and even if not technically within the rule is nevertheless unreasonable in extent and void.".

The complainants and certain other respondents take the converse position, claiming that said restraint is valid, contending that:

"*a.*   The restraint is not obnoxious to the rule against perpetuities.

"*b.*   The restraint is a limited and reasonable one and does not take away the whole power of alienation substantially."

For convenience, we will repeat the second paragraph of clause second of the will in question, as amended by the first clause of the codicil, as follows:

"And I further provide and declare that all the devises hereinabove made of portions of my Pojac Point Farm, and also those hereinafter made in the third clause of my will of my farm called Tanglewood, are made upon the condition that if any of my children, or grandchildren shall voluntarily or involuntarily alienate or devise the portion of said lands set apart to him or her other than to some descendant of mine (except for life to the wife or husband of some descendant), while such descendant, may be living and without the consent of all my descendants, who shall at the time be of full age and competent to convey and devise real property, in such event the interest of such child or grand child therein shall cease and be

determined and such estate shall thereupon vest in my other descendants then living per stipres and not per capita."

At the outset, in construing said paragraph, we hold that the words "while such descendant may be living," following the parenthesis, should be read as if included within the parenthesis, as referring to the last word "descendant" within the parenthesis, so that it would read "(except for life to the wife or husband of some descendant while such descendant may be living;") this gives a clear and definite meaning to the words, just as we should construe them if the parenthesis had not been used; and is obviously what the testatrix intended by them.

In further consideration of the construction of said paragraph, it is obvious that the restraint upon alienation is sought to be effected, not directly by a bald declaration that the estates given shall be inalienable, but indirectly by a provision for a limitation over by way of executory devise, if alienation (except as permitted) is attempted. We do not, however, understand that any of the parties claim that any different rule applies to restraints upon alienation in this form, as applied in this case, than is generally applied to restraints upon alienation in any other form; nor do we find that any of the cases cited make any such distinction. See *In Re Dugdale*, 38 Ch. D. 176, 181.

The first question involves the further construction of said paragraph to ascertain whether the time during which the restraint is intended to operate is such as to render it obnoxious to the rule against perpetuities. At the outset it is clear that the prohibition against alienation in this will is not a sweeping one, applying to all future owners or making any and all future alienation impossible. The restriction, as it appears in the codicil, applies only to the first devisees of the property and not thereafter. It is a restraint placed upon the children and such of the grandchildren as take a portion of the estate at the death of the testatrix by reason of the previous decease of their parent (a child of the testatrix).

In the first paragraph of the second clause of the will the testatrix carefully provided that her executors should plot out her Pojac Farm estate in "plots, approximately equal to each

other in area," and set apart the same, one to each of her surviving children and one to the child or children of a deceased child, and a similar provision is made in the third clause of the will in regard to the Tanglewood estate.    The testatrix doubtless had in mind the possibility that one or more of her children might die before her and leave children, and for such grandchildren she made provision by giving them their parents' share, subject to the same condition against alienation as was imposed on the portions given to her children.

In the codicil to the will she has clearly expressed this intention.    The condition is not imposed on all grandchildren living or unborn at the time of the testatrix's death, but only upon such grandchildren as have a portion of said lands "set apart to him or her."    These last words, quoted from the codicil, read in the light of the previous paragraph of this clause of the will, are not in any way applicable to grandchildren who receive a portion of this estate from their parent or from the other children of the testatrix, but are descriptive only of such grandchildren as are first takers of an interest in this estate, such as have a portion "set apart to him or her" by the executors when they make their apportionment.    It is significant that the insertion of these words "set apart to him or her" was one of the two changes made by the codicil in this paragraph as it stood originally in the will.    It is to be presumed that the testatrix intended something by this change, and we are of opinion that by such words she has clearly expressed her intention that the restraint on alienation should apply to her children and only to such of her grandchildren as should be first takers; the second paragraph of clause "second" of the will in its original form, prior to its amendment by the codicil, would, in our opinion, have been rightly construed as creating a perpetuity; and we are clearly of the opinion that this objection has been remedied by
(3) the amendment contained in the codicil.    The breach of the condition must occur, and the limitation dependent thereon must vest, if at all, within the lifetime or at the death of persons in being at the time of the death of the testatrix.    It follows, then, that this paragraph of the will in no way violates the rule

against perpetuities. (Gray: Rule against Perpetuities, p. 156.)

We have carefully considered the contrary views of counsel for the respondents Hayes upon this point, and find nothing therein to disturb our conclusions above expressed. It seems to us that the matter is too clear to require further discussion.

(4) But, while we hold that the attempted restraint upon alienation is so limited in its duration as not to be void for remoteness, as tending to create a perpetuity, yet we are of the opinion that such limitation in duration does not of itself make a restraint valid, if it is otherwise unreasonable or so general in its scope and effect as to operate as a substantially absolute restraint upon alienation for such limited time. See *In Re Rosher, Rosher* v. *Rosher,* L. R. 26 Ch. D. 801, 820, *et seq: Blackburn* v. *McCallum* (Canada), 33 S. C. R. 65; *Re Martin and Dagneau,* 11 Ont. Law Rep. 349, 351; *Renaud* v. *Tourangeau,* L. R. 2. P. C. A. 4; *In Re Dugdale,* 38 Ch. D. 176, 179: *Mandlebaum* v. *McDonell,* 29 Mich. 78, 94 *et seq; Potter* v. *Couch,* 141 U. S. 296, 315; *Anderson* v. *Cary,* 36 Ohio St. 506; Gray, Rest. on Alienation, §§ 52–54 (2d ed.) and other cases cited *infra.*

The next consideration involved is whether or not this restraint upon alienation, limited as we have shown as to its duration to the lives of the first takers, is also so limited as to its scope and effect that it is reasonable and does not take away substantially the whole power of alienation.

The language used restrains voluntary or involuntary alienation or devise, except to descendants of the testatrix who, at the time of making her will, and of her death, had six children, all of whom were adults and some of whom were married and had families. To any of these persons, or to any grandchildren of the testatrix born after her death, the possessor of any portion of these estates has the right of alienation, or devise. There is also the right to dispose of this property for life to the wife or husband of any descendant "while such descendant may be living." Finally, there is the right to alienate in any form, to any person in the world, with the consent of all the

other descendants of the testatrix capable of giving such consent.

Certain general principles regarding the nature of an estate in fee simple are undisputed. It is settled that the ownership of such an estate involves as an incident thereof the power of alienation; and that an absolute restraint upon all alienation is void. See Co. Inst. § 360; Shep. Touch. 129; Co. Litt. 222, 223a. But certain limited restraints have been held to be valid; thus in Co. Inst. § 361, it is said, "but if the condition be such that the feoffee shall not alien to such a one, naming his name, or to any of his heirs, or of the issues of such a one, etc., or the like, *which conditions do not take away all power of alienation from the feoffee, etc.*, then such condition is good."

The cases in England, in Canada, and in this country are in hopeless conflict as to the extent to which restraints may be permitted. The English cases most strongly relied upon by the complainants, and by certain respondents (the Wellings), in support of the validity of the restraint in the case at bar are *Doe d. Gill* v. *Pearson*, 6 East, 173 (1805); and *In Re Macleay*, L. R. 20 Eq. 186 (1875).

*Doe d. Gill* v. *Pearson*, 6 East, 173 (1805), is unquestionably a leading case on this subject in England. That was a case in the Court of the King's Bench, involving a devise to two of the testator's daughters, Ann and Hannah, "to hold to them my said daughters Ann and Hannah, their heirs and assigns forever as tenants in common, and not as joint tenants; *upon this special proviso and condition,* that in case my said daughters Ann and Hannah Collett, or either of them, shall have no lawful issue, that then and in such case they or she having no lawful issue as aforesaid, shall have no power to dispose of her share in the said estates so above given to them, except to her sister or sisters or to their children." Ann levied a fine of her share, and later died without ever having had any issue. Then Hannah made an entry to avoid this fine and brought ejectment. The case was fully argued before the full bench and the court took the matter under advisement. It was held, Lord Ellenborough delivering the opinion of the court, that the con-

dition was good in point of law and the testator's heirs could enter for breach of the condition. And the court cites, and relies strongly upon, *Daniel* v. *Ubley*, Sir W. Jones, 137; Latch 9, 39, 134.

In 1875 this case was followed in *In re Macleay*, L. R. 20 Eq. 186. In that case there was a devise to the testatrix's brother of certain land in fee "on the condition that he never sells it out of the family." The testatrix then gave legacies to her nephews and nieces named in the will, and after a legacy to a servant, gave the residue of her estate and effects to her "dear brothers" and "dear sisters." The devisee contracted to sell the land to Macleay and the question was whether he could give a valid marketable title. In his opinion, Sir G. Jessel, Master of the Rolls, held that the condition, being limited as to time, to the life of the first tenant in tail, was not void for remoteness; and being limited as to the mode of alienation, prohibiting sale only, did not forbid leasing, mortgaging, or settling; and was therefore a limited restriction upon alienation, and was valid. The learned judge distinguished the case of *Attwater* v. *Attwater* (18 Beav. 330), as being a case where the Master of the Rolls found that the devisee was, in effect, forbidden to sell at all. He cited with approval *Doe d. Gill* v. *Pearson* (*supra*), and says, at page 189: "The test is whether the condition takes away the whole power of alienation substantially; it is a question of substance and not of mere form."

It is to be noted that in *In Re Macleay*, the restraint was only against selling, and not against other forms of alienation. Lord Jessel laid stress upon this point, and also relied upon the fact that by the word "family" the testator meant to include all his blood relations, so that the class was very large. It is also to be noted that there was no argument of opposing counsel, as the case was heard *ex parte;* and that the correctness of the decision was doubted in the case of *Re Rosher*, 26 Ch. Div. 801, 816 (*infra*).

The same parties also cite certain Canadian cases in support of the doctrine of *In Re Macleay* (*supra*), viz.: *Earls* v. *McAlpine*, 27 Grant Ch. (U. C.) 161; *Re Weller*, 16 Ontario Rep.

318; *Smith* v. *Faught*, 45 U. C. Q. B. 484; *Re Northcote*, 18 Ont.
Rep. 107; *O'Sullivan* v. *Phelan*, 17 Ont. Rep. 730; *Pennyman*
v. *McGrogan*, 18 U. C. C. P. 132; *Re Winstanley*, 6 Ont. Rep. 315;
*Chisholm* v. *The London & Western Trusts Co.*, 28 Ont. 347;
*Re Martin and Dagneau*, 11 Ont. Law Rep. 349; *Re Porter*,
13 Ont. Law Rep. 399.

*Earls* v. *McAlpine, supra* (affirmed on appeal 6 A. R. 145),
which is regarded as a leading case in Canada, was a case where
the testator devised his farm to his two sons in equal moieties,
subject to certain legacies to his daughters and also a com-
fortable support for his wife or the sum of £10 to be paid by each
of the sons annually during her life, and directed that the
devisees should not sell or transfer the said property during
the lifetime of his widow without her written consent. One of
the devisees, however, without obtaining the consent of the
widow, mortgaged his portion of the estate. The court held
that the condition on the devise was valid, and that there had
been a forfeiture of the estate which the devisee took under the
will. (V. C., Blake) said: "I then thought and still am of
opinion that the condition in this will as to alienation is a
reasonable one—not repugnant—and one which could be
supported as intended to benefit the wife in further securing
the provision made for her under the will. I considered it
reasonably clear on the authorities that a condition not to
alien to a particular person or for a particular time is good;
and also that where the condition could be traced not to the
mere whim of the testator, but to the desire to secure a legacy,
or benefit a beneficiary under the will, there the court would
sustain the condition for any such purpose inserted in the will.
The case of *Daniel* v. *Ubley* (Sir Wm. Jones, 137), followed in
*Doe d. Gill* v. *Pearson* (6 East 173), supported this view." The
court referred to *Attwater* v. *Attwater*, 18 Beav. 330 (*infra*),
and *Gallinger* v. *Farlinger*, 6 U. C. C. P. 512 (*infra*), but refused
to follow them.

In *Re Weller, supra*, lands were devised to a married woman
with a provision not to alienate or incumber them until her
sister arrived at the age of forty years, and also that the

devise should be for her separate use independent of her
husband's control.   Held that the restraint on alienation was
valid and would have been so even if applicant had been *feme
sole.*  (Follows *Earls* v. *McAlpine,* 27 Gr. 161; S. C., 6 A. R.
145; *Pennyman* v. *McGrogan,* 18 C. P. 132; *Smith* v. *Faught,*
45 U. C. Q. B.; *Re Winstanley,* 6 Ont. Rep. 315; rather than
*Re Rosher,* 26 Ch. D. 801.)

*Smith* v. *Faught, supra,* was a case where there was a direc-
tion, in a devise of a fee simple, that the devisee should "not
sell or cause to be sold the above named lot or any part thereof
during her natural life, but she shall be at liberty to grant it
to any of her children that she shall think proper."   The
court quoted at length from *In re Macleay, supra,* and held that
since the restriction was limited in its effect, and reasonable,
it was valid.

*O'Sullivan* v. *Phelan, supra,* was a case where the testator
devised land to two nephews with the injunction that "neither
of my said nephews is to be at liberty to sell his half of the said
estate to anyone except to persons by the name of O'Sullivan
in my own family."   The court held that this was but a
restricted restraint on alienation, and was valid.

In the case of *Pennyman* v. *McGrogan, supra,* a testator
who died in 1854, devised certain lands to his two sons in fee,
"but not to be assigned to any person, except a son of his, for
the term of twenty years from the day of his decease."   Held,
that the condition was not void as in general restraint of
alienation, and that the plaintiff, who claimed an ejectment,
under a title derived from the sons in violation of this condition,
could only recover such portion of the land as they were en-
titled to as *heirs* of their father.   In delivering judgment of
court, Wilson, J. said:   "It is said in Smith on real and per-
sonal property, page 65, 'Where a conveyance or devise is
made of real property for an estate in fee, or a conveyance or
bequest of the absolute interest in personalty, subject to a
condition in general restraint of alienation, such a condition
is void for repugnancy, as a power of alienation is inseparably
incident to such an estate or interest.   But a condition not to

alien real or personal estate to a particular person or for a particular time is good.'    Co. Litt. Secs. 223 and 223 b; Co. Inst. Secs. 360, 361, Shep. Touch. 76, *Ware* v. *Cann*, 10 B. & C. 433.    In this case the restraint on alienation is only for a particular time, namely, twenty years, during which the devisees may alien to any of the sons of the testator.    But it is shown that within the twenty  years next after the death of the testator James and George both assigned their estate to McGrogan and therefore forfeited it."

In *Re Winstanley, supra,* E. R. W. was devisee under will of her father, R..B., of certain real estate, after death of his wife, real estate to be for benefit of his son and two daughters— a certain lot to E., providing she shall not dispose of same except by will; and in the same manner a lot to the other daughter, and if either depart life without leaving issue, then the survivor shall be possessed of share of deceased sister. Held, that E. took estate in fee simple subject to condition against alienation in any manner except by testamentary instrument, and that such restraint was valid.

In the case of *Chisholm* v. *The London & Western Trusts Co.,* 28 Ont. 347, the testator devised two parcels of land respectively to his two sons, and provided that the same were not to be at their disposal at any time until the end of twenty-five years after the testator's decease, and same shall remain free from all incumbrances and no debts contracted by his sons shall by any means incumber same during twenty-five years from date of his decease.    One of the sons died about two years after his father, having devised the lot to his brother; the plaintiff, who, within the period limited by his father's will, sought to mortgage it.    Held, a valid restriction so far as it was a restriction against the plaintiff selling and conveying the lands or incumbering them by way of mortgage within the period mentioned.    In this case the court said, p. 350 (citing with approval many of the above cases):    "The decided cases in our own courts show, as I think, that the restriction against alienation contained in this will and mentioned and referred to in the special case is a good

and valid restriction so far as it is a restriction against selling and conveying or encumbering lands by way of mortgage."

The case of *Re Martin and Dagneau*, 1906, 11 Ont. Law Rep. 349, contains a review of the Canadian and English cases above cited, and decides that a condition which restricts the devisees as to one manner of alienating, as by mortgaging or selling, is valid; but also citing cases to the effect that if all method of alienation was restricted even for a limited time, the condition would be invalid.

In *Re Porter*, 1907, 13 Ont. Law Rep. 399, it is held that where "the will forbids alienation by mortgage or selling during the lifetime of a devisee and does not restrain alienation by will, lease or other manner, except by mortgage or sale, such condition is good." The case refers to the case of *Re Martin and Dagneau* (*supra*) for discussion of the previous authorities, and approves and follows it.

In the brief for the respondents (Wellings), after the citation of the foregoing English and Canadian cases, we find the following statement. "In this country the authorities are in hopeless conflict on this question. There are but few decisions bearing directly on it, and it is safe to say that in not one of these is there a well considered opinion dealing adequately with the authorities." . . . And again, in the same brief, referring to authorities cited from the courts of this country, in support of the validity of the restraints here under consideration, we find the statement: "We frankly admit that for the most part they are dicta, but we submit that they are expressions of opinion by courts of high standing and judges whose opinions are of great weight. It should also be borne in mind that *our contention is not that any limited restraint on alienation is valid, but only such as is reasonable in its operation and does not in fact take away the whole power of alienation.*" We have carefully examined the cases thereafter cited on the said brief, and quite agree with the foregoing statements as applied to those cases. We do not find any case among them where the attempted restraint upon alienation was similar in scope and effect, or in any wise comparable to the restraints here under

consideration; and an extended review of these cases would only tend to confuse, and would furnish no precedent which would be of service in this discussion; we need only say, with regard to those cases, that, whatever statements they contain, which might possibly be construed to support the validity of the restraints here under consideration, are *obiter dicta* in most of them; that in *Jackson* v. *Schutz*, 18 Johns. 174, 184, cited to the effect that a "grantee may be restrained from assigning for a particular time," that statement was also *obiter dictum* because the case was really decided upon other grounds, and this point was not involved in the case; and was also contrary to the overwhelming weight of authority, as shown in the cases hereinbefore cited; with regard to *Jackson* v. *Schutz*, see also *De Peyster* v. *Michael*, 6 N. Y. 467, 490, *et seq.* where it is overruled so far as it relates to the question of general restraints on alienation; and see also *Mandlebaum* v. *McDonell*, 29 Mich. 78, 100. With regard to *Stewart* v. *Brady*, 3 Bush. 623, which was followed by *Stewart* v. *Barrow*, 7 Bush. (Ky.) 368, and later again by *Wallace* v. *Smith*, 113 Ky. 263, where the question was fairly presented, it was expressly held that an absolute restraint upon the power of sale of a fee for particular time is good; but there is no citation of authority by the court, and there appears to have been little consideration of the matter by either court or counsel in the earlier cases; while the last case is held to be ruled by the previous decision, the court saying: "We are constrained to hold," &c. These Kentucky cases are likewise against the weight of authority upon this point; see *Mandlebaum* v. *McDonell*, 29 Mich. 78, 106; Gray, Rest. on Alienation (2d ed). §§ 52, 53, 54. We find no other cases cited upon this point by the respondents (Wellings) which need be mentioned, except to say that the restraints under consideration in *Munroe* v. *Hall*, 97 N. C. 206, were treated as void; that in *Den* v. *Blackwell*, 15 N. J. Law (3 Gr.) 386, and *Feit* v. *Richards*, 64 N. J. Eq. 16, it was not necessary to pass upon the validity of the restraints, and the general remarks upon that subject are merely illustrative and clearly *obiter;* and the other cases cited, viz.: *Dougal* v. *Fryer*, 3 Mo.

40; *Langdon* v. *Ingram's Gdn.*, 28 Ind., 360; *M'Williams* v. *Nisly,* 2 Serg. & R., 507, 513; *Gray* v. *Blanchard,* 8 Pick. 284, 289; *Simonds* v. *Simonds,* 3 Metc., 558, 562, are all well and sufficiently reviewed in *Mandlebaum* v. *McDonell,* 29 Mich. 78, 98, *et seq,* and are there conclusively shown to have no proper application in support of the validity of restraints upon alienation, when limited in time, so as not to be void for remoteness.

In accordance with the above cited cases the complainants and respondents Welling contend that the restraints upon alienation here under consideration, which permit alienation only to members of a certain class of persons, are to be sustained as valid, because, in the language of Jessel, M. R., they do not take away "the whole power of alienation substantially;" (*In Re Macleay, supra*).

On the other hand, the respondents Hayes contend that in the case at bar the restraints under consideration, properly construed, do take away "the whole power of alienation substantially;" that the cases above cited, so far as they apply, are expressly decided upon the ground that the restraints considered are partial and limited; that none of such cases is applicable to the case at bar, and that the cases of *Doe d. Gill* v. *Pearson,* (*supra*) and *In Re Macleay* (*supra*) have been doubted and criticised, by English cases of great weight, and have not been followed to the full extent in England or in Canada; and that they are opposed to the great weight of authority in this country. And these respondents, in support of their contentions, cite the following English and Canadian cases: *Attwater* v. *Attwater,* 18 Beav. 330; *Billing* v. *Welch,* I. R. 6 C. L. 88; *Gallinger* v. *Farlinger,* 6 U. C. C. P. 513; *Heddlestone* v. *Heddlestone,* 15 Ont. Rep. 280; *In Re Rosher; Rosher* v. *Rosher,* 26 Ch. D. 801; 816; *In Re Dugdale, Dugdale* v. *Dugdale,* L. R. 38 Ch. D. 176; *Renaud* v. *Tourangeau,* L. R. 2 P. C. A. 4. And the same respondents also cite the following American cases: *Mandlebaum* v. *McDonell,* 29 Mich. 78; *Potter* v. *Couch,* 141 U. S. 296, 315; *Johnson* v. *Preston,* 226 Ill. 447; *Schermerhorn* v. *Negus,* 1 Denio (N. Y.), 448; *Bing* v. *Burrus,* 56 S. E. (Va.) 222; *M'-*

Cullough's Heirs v. Gilmore, 11 Pa. St. 370; Pardue v. Givens, 54 N. C. 306; Anderson v. Cary, 36 Ohio St. 506.

In Attwater v. Attwater (1853), 18 Beav. 330, a testator gave an estate to A., to become his property on attaining the age of twenty-five years, "with an injunction never to sell it out of the family; but if sold at all it must be to one of his brothers hereafter named," of whom there were five. The court refused to follow the earlier case of Doe v. Pearson, 6 East 173, and held that the clause was inoperative. In ruling against the validity of the provision, it said (p. 336): "The meaning is, I think, plain, that the testator intended to impose this fetter:—that if the brother will not buy, the devisee was not to be at liberty to sell the property to anyone. The question is whether such a condition is a valid one? Notwithstanding. the case of Doe v. Pearson, 6 East 173, this appears to me to be a condition repugnant to the quality of the estate given. It is obvious that if the introduction of one person's name, as the only person to whom the property should be sold, renders such a proviso valid, a restraint on alienation may be created as complete and perfect as if no person whatever was named; inasmuch as the name of a person who alone is permitted to purchase might be so selected as to render it reasonably certain that he would not buy the property, and that the property could not be alienated at all. It is not, in my opinion, desirable to impose fresh fetters on the enjoyment of property, and it appears to me, that this proviso is distinctly at variance with rules laid down by Lord Coke (Co. Litt. 223a), and which have always been considered and treated as good law. I am of the opinion, therefore, that this clause is merely inoperative."

The opinion in Attwater v. Attwater, was written by Sir John Romilly, M. R., and was followed in Billing v. Welch, I. R. 6 C. L. 88, where a covenant by the grantee of lands that he, his heirs and assigns, would not alienate, sell, or assign to anyone except his or their child or children without the license of the grantor, and reserving a penal rent for its breach was held repugnant to a fee simple and void. And see De Peyster v. Michael, 6 N. Y. 467.

The case of *Attwater* v. *Attwater*, was also followed in *Gallinger* v. *Farlinger*, 6 U. C. C. P., 513, which was a devise to the testator's sons in fee with the following restraint: "That my three sons, Michael, Henry and George shall not be at liberty to sell any part of my homestead farm herein willed except to each other and so descend to their heirs to the third generation." This restraint was held to be invalid.

In *Re Watson and Woods*, 14 Ont. 48, there was a devise to T., "on the conditions that he never will or shall make away with it by any means, but keep it for his heirs." This was held bad, and the court distinguished the previous case of *Re Winstanley*, 6 Ont. Reports, 315 (*supra*), on the ground that the "condition does not permit even a testamentary disposition."

Again, in *Heddlestone* v. *Heddlestone*, 15 Ont. Rep. 280, a condition that a devisee shall not dispose of certain land, either by sale or by mortgage, or otherwise, except by will to his heirs was held void, for it in effect takes away the whole power of alienation.

In the case of *In Re Rosher; Rosher* v. *Rosher* (1884), 26 Ch. D. 801, it appeared that a testator devised an estate to his son in fee, provided always that if the son, his heirs or devisees, or any person claiming through or under him or them, should desire to sell the estate, or any part or parts thereof, in the lifetime of the testator's wife, she should have the option to purchase the same at the price of £3,000 for the whole, and at a proportionate price for any part or parts thereof, and the same should accordingly be first offered to her at such price or proportionate price or prices. The real selling value of the estate was, at the date of the will and at the time of the testator's death, £15,000:— Held, that the proviso amounted to an absolute restraint on alienation during the life of the testator's widow; that it was void in law; and that the son was entitled to sell the estate as he pleased, without first offering it to the widow at the price named in the will. On page 810, Pearson, J., after stating the facts, continued: "The question I have to decide is whether, there being an absolute devise in fee simple to the son, the conditions annexed to it are valid.

I will deal first with the condition which relates to selling, and it will, I hope, shorten the observations which I have to make if I first state the manner in which I interpret this condition. The restriction upon selling is this, that if the son, or any person claiming through or under him, is minded to sell during the lifetime of the testator's widow, the estate intended to be sold, whether it is the whole or only part of the devised estates, must be offered to the widow at the price of £3,000 for the whole or at a proportionate price for a part. It is agreed that the value of the whole estate at the death of the testator was £15,000. It is, therefore, in effect a condition that, if the son desires to sell, he shall offer the estates to the widow, and that she is to be at liberty to buy them at one-fifth of their value. I consider that (and I mean to decide the case upon that conclusion) as an absolute restraint against sale during the life of the widow. I mean to treat it as if it had been, ' during the life of the widow you shall not sell,' because to compel him, if he does sell, to sell at one-fifth of the value, and to throw away four-fifths of the value of the estate is, to my mind, equivalent to a restraint upon selling at all."

It having been urged in argument that the restraint in question was only a limited restraint, because limited in time to the life of the widow, and limited as to the mode (forbidding *sale* only), and so valid within the rule laid down by Jessel, M. R., in *In Re Macleay* (*supra*), the learned judge, after reading from that case, goes into a most elaborate and searching analysis of the cases upon which it is founded, viz.: *Daniel* v. *Ubley* (*supra*) and *Doe* v. *Pearson* (*supra*); and thereupon makes the following remarks, p. 816: "I ask myself, and with all respect I hope for the learned judges who decided those cases, what was the principle upon which they went, and how by any possibility that principle is to be applied to other cases in the future? In *Daniel* v. *Ubley*, the widow was to alienate to one of her sons: in *Doe* v. *Pearson* the discretionary power of alienation was limited ' to her sister or sisters, or their children.' What am I to say is the principle? Is it that there may be a condition that, if you alienate, you must alienate to a member of your

own family, or that you must look to the number of the individuals to whom the alienation is permitted, or when there are a number of individuals (not knowing at the present moment what that number may be), am I to inquire whether they are able, or likely to be willing, to purchase the property to which the condition is attached?    If they are able and willing to purchase the property, am I to say that the condition is good, and if from their poverty they are unable, or from other circumstances are unwilling, am I to say that the condition is bad?    It seems to me that the adoption of any such rule as that would produce the greatest uncertainty and confusion; in fact it would be absolutely impossible for any judge to apply such a rule to any case which might come before him, unless the facts of the case were absolutely identical with those of some previously decided case."    And the learned justice then most carefully analyzes the judgment in *In Re Macleay*, and having shown many inconsistencies therein, with what he conceives to be the true principles laid down by Lord Coke, and certain inconsistencies, which he well sets forth, between different passages quoted from Lord Coke himself, proceeds to make the following remarks (pp. 819, 820):    "I should be very sorry to do Sir George Jessel any injustice, and I must honestly say that in attempting to criticise so able and learned a Judge I am always afraid of falling into some error myself, and I am not quite certain that I understand correctly the extent to which in those passages he means to go.    If he means to assert that, provided you give a power to mortgage or lease, you may restrain the power to sell, all I can say is, that I most respectfully differ from him, and I cannot understand how, after he had cited the maxim from *Coke* which he had quoted, he should have tried to lay down any such doctrine.    Applying what he says to the present case, does he means that, the estate being worth £15,000, although there is a restriction against selling, the son might immediately mortgage it for £15,000, or might lease it for 999 years?    I can only say that it seems to me that both those things are hit by the maxim which he quotes with the greatest approbation, *quando aliquid prohibetur fieri, ex directo prohib-*

*etur et per obliquum:* and that this would be an infringement of
any such condition is proved (if proof were wanting) by Large's
case" (3 Leon. 182), "where, there being a gift to a son with a
condition annexed to it that he was not to alienate within a
particular time, he having granted four leases for sixty years to
begin one after the other, it was held that they came within
the prohibition. And in any case, if you are to hold that,
though there is a prohibition of sale in the ordinary sense of
the word ' sale,' still you may dispose of the estate in any other
way, the condition so construed to my mind would be an
absurd one; and, if not absurd, I am perfectly satisfied that
the court would never now allow advantage to be taken of it
because something had been done in one way which might have
been done effectually in another way. It still remains for me
to consider whether there is any decision that a condition
absolutely restraining alienation is good if there is a limitation
as to time, because, although I have dealt with these cases in
order to clear the way with regard to the foundation upon which
all the exceptions rest, still, as I hold that the exceptions stand
on a principle absolutely removed from that of repugnancy,
there may yet exist an exception which can be made to the
condition, and which will be good by reason of a limitation of
time." The learned justice then proceeds to examine the
question whether a restraint upon alienation which takes away
the powers of alienation for "a reasonable time, not trenching
on the law against perpetuities," may be sustained as valid, by
reason of such limitation of time; and, after a careful examina-
tion of Large's Case, 2 Leon. 82, 3 Leon, 182, and showing that,
by misconception of the nature and effect of that case, it seems
to have been held by certain textwriters that it was therein held
that a condition attached to a devise in fee, not to sell within a
limited time, was a good condition, finds (p. 821): "that there
is not a single judicial decision to be found in the books showing
that a limitation as to time added to such a condition makes
it a valid condition," and cites, with approval, upon this branch
of the case, *Mandlebaum* v. *McDonell* (18 Am. Rep. 61, 80),
29 Mich. 78, 102. The decision of the case is accordingly to the

effect that a condition in absolute restraint of alienation annexed to a devise in fee, even though its operation is limited to a particular time, *e. g.*, to the life of another living person, is void in law as being repugnant to the nature of an estate in fee. And see to the like effect *Renaud* v. *Tourangeau*, 1867, L. R. 2 Priv. Counc. App. 4, where a testator in Lower Canada, by will devised real estate to his children, providing that they should in no way alienate the property until twenty years after death of testator: The Judicial Committee, per Lord Romilly, held that the restriction "was not valid either by the old law of France, or the general principles of jurisprudence."

In the case of *In Re Dugdale*, L. R. 38 Ch. D. 176, it appeared that a testatrix gave certain real and personal estate "upon trust for my third son, J., his heirs and assigns; but if my said son should do, execute, commit or suffer any act, deed or thing whatsoever whereby or by reason or in consequence whereof, or if by operation of law, he would be deprived of the personal beneficial enjoyment of the said premises in his lifetime, then and in such case the trust hereinbefore contained for the benefit of my said son shall absolutely cease and determine, and the estates and premises hereinbefore limited in trust for him" should go and be held in trust for his wife, or, if no wife then living, for his children equally; it further appeared that J. survived his mother, and was still living, a bachelor; and that he brought this suit by summoning in the other parties interested, and trustees under the will, claiming a declaration by the court that he was entitled absolutely to the property devised and appointed to him, upon the ground that the executory devise over was repugnant and void. And it was held, that he took an absolute interest under the gift, and that the attempted executory gift over was void for repugnancy.

The court (Kay, J.) cites *In Re Macleay, supra,* and notes the dissent therefrom in *In Re Rosher, supra,* and, after discussing the nature of the estate devised, and the differences between conditions, conditional limitations, remainders and executory devises, proceeds as follows (p. 182): "The events upon which the executory devise in this case is to take effect seem to be 1.

alienation, and 2. bankruptcy, or judgment and execution. The alienation contemplated is any alienation whatever by the devisee, not limited in any way. This is clearly invalid. With respect to the other event, bankruptcy or judgment and execution effect an involuntary alienation. Can a fee simple estate be divested by an executory devise on that event? The liability of the estate to be attached by creditors on a bankruptcy or judgment is an incident of the estate, and no attempt to deprive it of that incident by direct prohibition would be valid. If a testator, after giving an estate in fee simple to A., were to declare that such estates should not be subject to the bankruptcy laws, that would clearly be inoperative. I apprehend that this is the test. An incident of the estate given which cannot be directly taken away or prevented by the donor cannot be taken away indirectly by a condition which would cause the estate to revert to the donor, or by a conditional limitation or executory devise which would cause it to shift to another person." And see *In Re Machu*, 21 Ch. D. 838; Gray, Res. on Alienation (2d ed.), § 22 and cases cited; 4 Kent's Comm. p. *131 (note); *Potter* v. *Couch*, 141 U. S. 296, 315 (*infra*), as to the invalidity of restraints by way of condition or limitation attempted to be imposed upon an estate in fee in the event of bankruptcy or insolvency or attack by creditors.

In *Mandlebaum* v. *McDonell*, 29 Mich. 79, where the court found that there was neither a strict condition with reverter, nor a conditional limitation over, but only a restriction upon all alienation for a limited time, we find the most comprehensive and satisfactory review of the authorities to be found in any of the cases cited. The authorities upon the subject of restrictions upon the right of alienation, and especially *Large's case*, 2 Leonard, 82; 3 Leonard, 182, are fully discussed; and the doctrine announced by some text writers and annotators, and supported by some *dicta* by judges, and perhaps by one or two American decisions, and which seems by all such to be referred finally to *Large's case*, that a restriction suspending all power of alienation of a vested estate in fee for a reasonable time only is valid, is held not to be sustained by that decision,

or by any other known English decision since the statute *quia emptores.* The learned court, after determining the nature of the estate devised by the will to be a vested remainder in fee, and after a general discussion of the nature of real estate and the incidents of estates therein, proceeds as follows (p. 94 *et seq);* "Coming now to a fee simple estate, the highest known to the law and its incidents, no one would contend that a condition in the conveyance of such an estate, that the grantee should not commit waste, nor take the profits, or that his wife should not have dower, or the husband curtesy, or that it should descend to executors, instead of heirs, or one half to female and the other to male heirs, without regard to the number of either, etc., would be valid.

"At common law, however, prior to the statute *quia emptores,* a condition against alienation would in England have been good, because prior to that statute the feoffor or grantor of such an estate was entitled to the escheat on failure of heirs of the grantee, which was properly a possibility of reverter, and was treated as a reversion; so that the vendor did not, by the feoffment or conveyance, part with the entire estate; but this reversion, dependent on this contingency, remained in him and his heirs, which gave them an interest to insist upon the condition and take the benefit accruing to them upon the breach.—2 Thomas' Coke Lit. 27, and *De Peyster* v. *Michael,* 6 N. Y. 467. (This is the fullest and ablest discussion of the whole question of restrictions upon the sale of estates in fee (except as to the question of time), and contains the most complete citation of authorities of any case I have found in the books, and relieves me from going over the general subject.) Whether the statute *quia emptores* ever became effectual in any of the United States by express or implied adoption, or as a part of the common law, we need not inquire, since it is clear enough that no such statute was ever needed in this state, if in any of the western states, as no such right of escheat or possibility of reverter ever existed here in the party conveying the estate; but the escheat could only accrue to the sovereignty, the state. And, therefore, the question of the right to impose

such conditions or restrictions stands here upon common law reasons, as it has stood in England since the statute in question.

"Going back to Littleton for the law as it was understood in England after the reversion had been taken away by the statute, in section 360, he states the general principle thus: 'If a feoffment be made upon this condition, that the feoffee shall not alien the land to any, this condition is void, because when a man is enfeoffed of lands or tenements he hath power to alien them to any person by the law. For if such a condition be good, then the condition should oust him of all power which the law gives him, which should be against reason; and therefore such a condition is void.' And Lord Coke, commenting upon this passage, says: 'And the like law is of a devise in fee upon condition the devisee shall not alien, the condition is void; and so it is of a grant, release, confirmation, or any other conveyance whereby a fee simple doth pass. For it is absurd and repugnant to reason that he that hath no possibility to have the land revert to him should restrain his feoffee in fee simple of all his power to alien. And so it is if a man be possessed of a lease for years, or of a horse, or of any other chattel, real or personal, and give or sell his whole interest or property therein, upon condition that the donee or vendee shall not alien the same; the same is void; because his whole interest and property is out of him, so as he hath no possibility of reverter; and it is against trade and traffic, and bargaining and contracting between man and man.'—*Iniquum est ingenuis hominibus non esse liberam rerum suarum alienationem, etc.* (Freely translated): It is a wrong to freemen to restrain the free alienation of their property.

"But Littleton, in section 361, makes this qualification: 'But if the condition be such that the feoffee shall not alien to such a one, naming his name, or to any of his heirs, or of the issues of such a one, etc., or the like, which conditions do not take away all power of alienation from the feoffee, etc., then such a condition is good.'

"Chancellor Kent, however, says (Co. Vol. 4, p. 131): 'But

this case falls within the general principle, and it may be very questionable whether such a condition would be good at this day ' (citing the case of *Newkerk* v. *Newkerk,* 2 Caines' R., 345, where the condition that the devisee should continue to inhabit the town of Hurley was adjudged to be unreasonable). And certainly, in a country like ours, where lands are as much an article of sale and traffic as personal property, and the policy of the state has been to encourage both the acquisition and easy and free alienation of lands, such restrictions ought not to be encouraged by the courts.   But the exception stated by Littleton in section 361, above quoted, was certainly pushed to its extreme verge (and beyond that warranted by any other English case), in *Doe* v. *Pearson,* 6 East, 173, where it was held that a condition against alienation, except to the sisters of the devisees or their children, annexed to a devise in fee, was good, and that the heirs of the devisor might recover on its breach.   And I think there is much reason to doubt whether this case should be recognized as law here (if, indeed, it would be now in England. See *Attwater* v. *Attwater,* 18 Beav., 330); *Schermerhorn* v. *Negus,* 1 Denio, 448.   But however competent it may be, under the authorities, to impose upon an estate in fee, a condition against alienation to certain specified persons, it does not follow, and the authorities upon the point have no tendency to show, that a condition against selling such an estate at all to any party or parties, for a long, or for any period of time, would be valid. And it is this latter species of condition or restriction only, and the authorities bearing upon it, that we are here considering. The restriction against selling to particular persons, or to any but certain specified parties, does not, if valid, suspend for a moment the power of sale, but a sale may be made at any time to parties not coming within the restriction.   Now, neither Littleton nor Coke, nor any of the annotators of Coke upon Littleton (so far as I have been able to discover), has mentioned any such qualification of the general rule laid down by Littleton in section 360, nor anywhere intimated that such a condition against alienation for a particular time, or for a reasonable time, or for any time whatever, would be valid.   And the same may

be said of the other approved English works upon real estate: *Blackstone's Commentaries, Sheppard's Touchstone, Bacon's Abridgment, Cruise's Digest, Comyn's Digest,* and all other English works which I have been able to examine. And if there is any English decision since the statute *quia emptores,* where the point was involved, in which is was held competent for a feoffor, grantor or devisor of a vested estate in fee simple, whether in remainder or in possession, by any condition or restriction in the instrument creating it, to suspend all power of the feoffee, grantee, or devisee, otherwise competent, to sell, for a single day, I have not been able to find it; and the able counsel for the defendants, whose research nothing of this kind is likely to escape, seem to have been equally unsuccessful. In making this statement I do not overlook *Large's Case,* 2 Leonard, 82; and 3 Leonard, 182, which by some elementary writers and annotators, and in some *dicta* by judges, and perhaps one or two decisions in this country, seems to have been understood as warranting such a restriction, and upon which all such elementary writers, annotators, and judges, who profess to rest such an opinion upon any authority, rely, but which I propose presently to show decides no such thing as to any vested estate of any kind.

"Neither Chancellor Kent, in his Commentaries, nor Mr. Hilliard, in his work on real property, recognize the validity of such a restriction, though they both notice all the others mentioned as good by Littleton, Coke, Cruise, Bacon, and Sheppard (or Mr. Justice Doderidge, whichever was the author of the Touchstone). And Bacon and Hilliard, as well as Fearne, Cruise, and the annotators upon Coke *super* Littleton, cite *Large's case* to another point which it does involve, but not to what we are now considering."

The court then proceeds to a review of the English and American cases, and concludes as follows: "We are entirely satisfied there has never been a time since the statute *quia emptores* when a restriction in a conveyance of a vested estate in fee simple, in possession or remainder, against selling for a particular period of time, was valid by the common law.

And we think it would be unwise and injurious to admit into the law the principle contended for by the defendant's counsel, that such restrictions should he held valid, if imposed only for a reasonable time.   It is safe to say that every estate depending upon such a question would, by the very fact of such a question existing, lose a large share of its market value.   Who can say whether the time is reasonable, until the question has been settled in the court of last resort; and upon what standard of certainty can the court decide it?   Or, depending as it must upon all the peculiar facts and circumstances of each particular case, is the question to be submitted to a jury?   The only safe rule of decision is to hold, as I understand the common law for ages to have been, that a condition or restriction which would suspend all power of alienation for a single day, is inconsistent with the estate granted, unreasonable and void.

"Certainty in the law of real estate, as to the incidents and nature of the several species of estates and the effect of the recognized instruments and modes of transfer, is of too much importance to be sacrificed to the unskillfulness, the whims or caprices of a few peculiar individuals in isolated cases."

The case of *Mandlebaum* v. *McDonell, supra,* was approved and followed in *Bennett* v. *Chapin,* 77 Mich. 526, and *In Re Est. of Schilling,* 102 Mich. 612; and see Gray, Res. on Al. (2nd. ed.), p. 41, where Mr. Gray says: "In *Mandlebaum* v. *McDonell,* 29 Mich. 78, the court thought there was neither a condition nor a conditional limitation, but only a restriction on alienation within a limited time; but the opinion of Christiancy, J., holding the restriction bad, is the fullest argument against the validity of such conditions and conditional limitations to be found in the books. . . . . Since the full discussion and the decision in *Mandlebaum* v. *McDonell,* followed and approved by *Re Rosher,* and *Potter* v. *Couch,* it is probably safe to say that the invalidity of restrictions against alienation of fees simple, though limited in time, is now established, except in the Province of Ontario."

In *Potter* v. *Couch,* 141 U. S. 315, 316, the court, in dealing with a restraint upon alienation for a period of twenty years

after testator's death, says, p. 315, per Mr. Justice Gray: "The testator having declared his will that the devises of the shares shall be 'for the personal advantage of' the devisees, and that 'no creditors or assignees or purchasers shall be entitled to any part,' and having directed the devise over to take effect 'if either of the devisees shall in any way or manner cease to be personally entitled to the devise made for his benefit,' the devise over of the shares of the brother and the nephew, if valid, would take effect upon any alienation by the first devisee, whether voluntary or involuntary, by sale and conveyance, by levy of execution, by adjudication of bankruptcy, or otherwise; or, at least, upon any such alienation before his vested equitable estate became a legal estate after the expiration of the twenty years.

"But the right of alienation is an inherent and inseparable quality of an estate in fee simple. In a devise of land in fee simple, therefore, a condition against all alienation is void, because repugnant to the estate devised. Lit. § 360; Co. Lit. 206, b, 223 a; 4 Kent Com. 131; *McDonogh* v. *Murdoch*, 15 How. 367, 373, 375, 412. For the same reason, a limitation over, in case the first devisee shall alien, is equally void, whether the estate be legal or equitable. *Howard* v. *Carusi*, 109 U. S. 725; *Ware* v. *Cann*, 10 B. & C. 433; *Shaw* v. *Ford*, 7 Ch. D. 669; *In re Dugdale*, 38 Ch. D. 176; *Corbett* v. *Corbett*, 13 P. D. 136; *Steib* v. *Whitehead*, 111 Illinois, 247, 251; *Kelley* v. *Meins*, 135 Mass. 231, and cases there cited. And on principle, and according to the weight of authority, a restriction, whether by way of condition or of devise over, not forbidding alienation to particular persons or for particular purposes only, but against any and all alienation whatever during a limited time, of an estate in fee, is likewise void, as repugnant to the estate devised to the first taker, by depriving him during that time of the inherent power of alienation. *Roosevelt* v. *Thurman*, 1 Johns. Ch. 220; *Mandlebaum* v. *McDonell*, 29 Michigan, 77; *Anderson* v. *Cary*, 36 Ohio St. 506; *Twitty* v. *Camp*, Phil. Eq. (No. Car.) 61; *In re Rosher*, 26 Ch. D. 801."

And the court pointedly distinguishes such limitations im-

posed upon an estate in fee from the provisions of "spendthrift trusts," saying, p. 317: "The case at bar presents no question of the validity of a proviso that income bequeathed to a person for life shall not be liable for his debts, such as was discussed in *Nichols* v. *Levy*, 5 Wall. 433; in *Nichols* v. *Eaton*, 91 U. S. 716; and in *Spindle* v. *Shreve*, 111 U. S. 542."

In *Johnson* v. *Preston*, 226 Ill. 447, there was a devise to an executor for twenty-five years from the date of probate of the will in trust for A. and B., without power of alienation by the executor or A. or B. during said twenty-five years, except that A. or B. might convey one to the other. The court held that this provision was void as violating the rule against perpetuities, because the time, when the estate would vest in the executor, being dependent upon the probate of the will, might be postponed for more than twenty-one years after the death of the testator, there being no certainty as to when the will would be probated; that as the attempt to create a trust estate in the executor failed, the estate became vested in fee in the beneficiaries under the will at the death of testator; and with regard to the restraint upon alienation attempted to be imposed by the will, the majority opinion says (p. 462): "The general rule is that where a devise is made in fee either of a legal or an equitable interest, all limitations tending to deprive the estate of any of the incidents appertaining to the interest created are held to be repugnant to the devise and void. To transfer a fee, and at the same time to restrict the free alienation of it is to say that a party can give and not give in the same breath."

In *Schermerhorn* v. *Negus*, 1 Denio, 448, where a testator devised property to his six children for life, remainder to their children per stirpes in fee; and then restricted its alienation by the following clause: "Item. It is my true intent and meaning of this my last will and testament (anything herein contained to the contrary thereof in any wise notwithstanding) that no part or parcel of the real estate herein above by me devised shall be sold or alienated by any of my above named children, or by any of their descendants or posterity, except it be to each other, or to their and each of their descendants,

upon pain that he, she or they shall forfeit the same and be
debarred of holding any part thereof." The court in its
opinion did not mention the rule against perpetuities, but held
the restriction to be invalid as being repugnant to the nature
of the estate devised, citing: 4 Kent's Com. 131, *Newkerk* v.
*Newkerk*, 2 Caines, 345, 2 Cr. Dig. 6; *M'Williams* v. *Nisly*, 2
Serg. & Rawle, 513, Co. Litt. 222, 223.

In *Bing* v. *Burrus*, 56 S. E. (Va.) 222, there was a devise
of land to be equally divided among the testator's three sons,
with the following proviso: "I further desire and direct that,
if either of my sons above mentioned desires to sell his part of
the land, the preference of purchase shall be given to one or
both of his brothers above mentioned, provided they will pay
as much for the land as can be obtained for it from an outside
party," &c., and provides for time to be given for payment.
It was held that the clause giving a preference of purchase to
the other brothers did not deprive the devisee of the absolute
power of sale of his share.

In *M'Cullough's Heirs* v. *Gilmore*, 11 Pa. St. 370, there was a
devise to W. in fee, "laying this injunction and prohibition
not to leave the same to any but the legitimate heirs of his
father's family at his decease." Page 373, the court comments
on this word "family," as follows: "In this case, however, the
restriction is uncertain. Whom did the testator mean by the
heirs of his *father's family?* A man's family may be considered
as his household at a particular period; or as his race or genera-
tion. There is nothing in the will to designate or describe
what the testator meant by his father's family. A family in
its collective or aggregate capacity can have no heirs. We
are, therefore, all in the dark as to whom the testator intended
to designate by the use of the words 'heirs of his father's
family.' We may, perhaps, indulge a reasonable conjecture
that he intended to describe the heirs of his father. If so, as
William had never married, and left brothers and sisters, and
children of deceased brothers and sisters, who were the legiti-
mate heirs of his father, and who were also his own heirs, the
devise would then be to William and his heirs, and a restriction,

that he should not devise it to any but his own heirs. Such a restriction would be totally inconsistent with a reasonable enjoyment of the fee and hostile to the characteristic qualities of a fee. No case has carried the doctrine of partial restraint upon alienation to anything like the length that this would go. It is necessary that the symmetry of a fee-simple estate should be preserved. It is the simplest and best form of estate, for the structure of our social condition. The testator had a manifest general intent to give a fee-simple in the land to his brother William; he had an obscure, uncertain, and ill-defined particular or secondary intent in relation to the power of alienation, which would be inconsistent with a reasonable enjoyment of the fee, and which is therefore void; and void also for uncertainty.''

In *Pardue* v. *Givens*, 54 N. C. 306, the testator devised in fee to his children, and desired that his children should continue to live upon the land devised to them. The will provided that in case they sold the land, or did not abide upon it, their share should go to the others, and it was held that this attempted restraint on alienation was void.

In *Anderson* v. *Cary*, 36 Ohio St. 506, there was a devise to the two sons of the testator upon the condition that they should not be allowed to dispose of the property until the expiration of ten years from the time one of the sons arrived at full age, except to one another. The court held that the attempted restraint was invalid, and said: ''The owner of property cannot transfer it absolutely to another and at the same time keep it to himself. We fully admit that he may restrain or limit its enjoyment by trusts, conditions or covenants, but we deny that he can take from a fee simple its inherent alienable quality and still transfer it as a fee simple.''

After the above extended review of the cases, which seems to be necessary, or at least consistent, in view of the fact that the questions here presented are of first impression in this State, it will be convenient to repeat the language here under consideration, with a view to the determination of its scope and effect, and of the rules of law, to be deduced from the cases, by which

the question of its validity or invalidity should be governed. , The second paragraph of the second clause of the will of the testatrix, as amended by the first clause of the codicil, is as follows (with the change of parenthesis, to accord with our previous construction): "And I further provide and declare that all the devises hereinabove made of portions of my Pojac Point Farm, and also those hereinafter made in the third clause of my will of my farm called Tanglewood, are made upon the condition that if any of my children or grandchildren shall voluntarily or involuntarily alienate or devise the portion of said lands set apart to him or to her other than to some descendant of mine (except for life to the wife or husband of some descendant while such descendant may be living) and without the consent of all my descendants, who shall at the time be of full age and competent to convey and devise real property, in such event the interest of such child or grandchild therein shall cease and be determined and such estate shall thereupon vest in my other descendants then living *per stirpes* and not *per capita.*"

As preliminary to the particular discussion of the language above quoted, it would be well to consider for a moment what meaning or force should be attached to the words "*power* of alienation," or "*right* of alienation," spoken of by all the (7.) authorities as incident to the ownership of an estate in fee-simple. We regard the words "power" or "right," so used, as of much greater significance than would seem to be attached to them by some of the cases above cited. We conceive the power or right of alienation to include the power or right to dispose of property held in fee, in such manner as the owner sees fit, whether by direct gift, by settlement in trust or by will, or by sale at a price to be fixed by the owner at private sale, or by sale at public auction, or by lease, mortgage, or other mode of conveyance, so that the purpose of the owner thereof in its disposition may be carried out, whether it be a purpose of benevolence, or a purpose to obtain value therefor up to the full market or adequate value thereof; and as further incident to such power or right, that an estate in fee simple vested in the

owner should be subject to the owner's debts and liabilities, so that the owner's creditors may be enabled to avail themselves thereof through bankruptcy or insolvency proceedings or by ordinary process of law or suit in equity.   We do not conceive that the meaning of the words "power" or "right" of aliena- tion is in anywise satisfied, when, by reason of attempted re- straints upon alienation, there exists only a possibility or even a probability that the owner may be able to dispose of his property by sale to some one or more of the descendants of his mother (if any one or more of them will buy it), at some price or other (if any one or more of them can and will afford to pay for it); or by gift to one or more of them (if one or more of them will accept it); or by devise to one or more of them.   Nor do we conceive that any "power" or "right" of alienation, in the proper sense of the words remains, when the owner is forbidden to alienate or devise to any one except descendants, "without the consent of all my descendants  . . . .  of full age and competent," &c.   The most that can be said of this latter pro- vision is that it suggests a way by which alienation to others than descendants *may* be made, if every one of a large number of relatives gives consent; so that any one person of that class can absolutely prevent alienation if he or she wishes to do so. It is an entire misuse of language, when we are considering the provisions here in question, to say that any "power" or "right" of alienation is left in the first takers as devisees under the will; the "power" or "right" to *prevent* alienation by any first taker absolutely, or to *permit* it, if they see fit, is given to the other "descendants;" there remains in the first taker only a possibility of being able either to give away or sell his estate, dependent upon the willingness or ability of any one or more of the "other descendants" to accept the gift or purchase the estate; or upon the consent of all of them, being "of full age and competent," &c., to alienate or devise to anyone other than a descendant.   The only "*power*" or "right" which can, by any fair construction of the language, be said to remain in the first taker, is the power or right to devise "to some descendant of mine;" so that while the testatrix, as we have construed the will,

gave to each of her children an estate in fee, she has attempted to take away from each of them all "*power*" or "*right*" of alienation, substituting therefor the control, or consent, of the others or their descendants; and only leaving them the "*right*" to devise to some other descendant. A careful examination of the cases above cited shows that only in the English case of *Doe* v. *Gill* v. *Pearson* (*supra*), and some of the Canadian cases which follow the same general doctrine, has any such general restraint upon alienation, imposed upon a fee-simple, as in the case at bar, been sustained as valid; that in *In Re Macleay, supra,* and in the Canadian cases which follow its doctrine, the restraints sustained as valid were more limited in their scope and effect than those here under consideration; and that the authority of both the above English cases has been so far destroyed by the much better considered cases of *Attwater* v. *Attwater, supra; Billing* v. *Welch, supra; Re Rosher, supra; Re Dugdale, supra;* and *Mendlebaum,* v. *McDonell, supra,* that it is doubtful whether they would now be regarded as sound law even in England; and we are of the opinion that they are entirely without weight as authority in this country. We find no case in this country where any such general restraint upon alienation has been supported as valid; on the contrary, we find that in each of the few cases cited where any such general restraints upon alienation have been considered, they have always been held to be invalid. The restraints considered in *In Re Rosher,* 26 Ch. D. 801; *De Peyster* v. *Michael,* 6 N. Y. 467; *Bing* v. *Burrus,* 56 S. E. (Va.) 222, where conditions were imposed restraining alienation until after option of purchase had been given by the owner, were in some respects less general and absolute than those in the case at bar, because in the last mentioned cases there was a certainty that the owner could sell his estate at some price, either to the holder of the option of purchase or, if that option were offered and refused, then to anyone else who would buy; while in the case at bar, as we have seen, the owner may not be able even to give it away, except by devise to a "descendant."

There remains to be considered the restraint upon "involuntary" alienation, which we take to mean and include such

alienation as would result from attachment, levy, and sale for taxes or other debts due from the owner, or from proceedings in bankruptcy, insolvency, or otherwise, whereby the owner would be deprived of his interest in the property for the benefit of a, creditor or creditors. No case is cited where a restraint of this character imposed upon an estate in fee-simple has been sustained. On the contrary, we are of the opinion that the law is well settled, both in England and in the United States, that such restraints are void. See *In Re Dugdale*, 38 Ch. D. 176 (*supra*); *In Re Machu*, 21 Ch. D. 838; Gray, Res. on Alienation (2d ed.), § 22 and cas. cit.; 4 Kent Comm. p. *131 (note) (12th ed.); *Potter* v. *Couch*, 141 U. S. 296, 315 (*supra*).

While we find no case cited where the restraints imposed were so similar in all respects to those in the case at bar that a further comparison would be useful, we are of the opinion, in answer to the first question certified to this court for determination, that the restraints here under consideration are so general, and so nearly absolute in their character, that they should be held to be invalid under the general doctrines so ably set forth in the cases above cited beginning with *In Re Rosher* (*supra*); and that, even under the test suggested by Jessel, M. R., in *In Re Macleay* (*supra*), the restraints imposed in this case do take away "the whole power of alienation substantially" and are therefore repugnant and void.

We come now to the consideration of the second question certified to this court for determination, viz.: "2. If the restraint on alienation imposed by the second paragraph of clause 'second' of the will of said Katharine C. Welling as amended by the 'First' clause of the codicil is invalid, are the 'Second' and 'Third' clauses of said will as amended by the 'First' clause of said codicil thereby rendered wholly invalid and of no effect, or are said clauses as thus amended valid as a devise of the real estate therein mentioned free from the restraint upon alienation?"

The general intent of the testatrix in respect to this devise is very clear. She desired that her six children should have adjoining portions of her two estates in North Kingstown as

sites for country homes in proximity to each other, in the hope that this would result in promoting affectionate relations between her children and grandchildren. She entrusted the power of apportioning the property to two of her sons, executors of the estate, and directed that they should allot to each of her children a portion of the Pojac Point Farm and Tanglewood estates, such portions to be "approximately equal to each other in area." She then sought to further her purpose by enjoining the first takers of each portion of real estate from disposing of such property to any one not in the family, unless all her descendants should consent to alienation to other persons.

(5)  This restraint on alienation was only incidental to her general scheme of making provision for her children. She attempted to impose it only upon the first devisees of the property; she did not intend that it should be operative beyond the first generation of those who took the property.  It was merely intended to aid her controlling desire that her children should share in these two estates, and her intention that this property should be apportioned and allotted by her executors among her children. It was a mere detail in carrying out her testamentary scheme.

The counsel for certain respondents, however, have urged that if the testatrix had known that the alienation clause of the will would be declared invalid, she would never have given her children portions of the two estates "approximately equal to each other in area." This, however, is at most only conjectural, and we find no ground for holding that the intention of the testatrix to impose these restraints upon alienation was so far an inseparable and integral part of her general testamentary plan that she would not have made these devises if she had been advised that she could not lawfully restrain alienation in the way she proposed. We find that her main purpose was to provide that each of children, or the issue of any deceased child, should have parts of her two estates approximately equal in area in order that they might have neighboring sites for country homes. Her general intention, therefore, should be made ef-

fective, and such incidental feature as is here held to be void should be disregarded.  *Bailey* v. *Brown,* 19 R. I. 669.

(6)  ' The rule of law applicable to this phase of the case is clear. Where invalid portions of a will can be separated from that which is valid, without doing violence to the general testamentary scheme, the invalid clauses will be disregarded and those that are valid will be upheld.  Clauses imposing unlawful restraint on alienation are seldom inseparably attached to the general testamentary plan and consequently they may be rejected and the devise remain operative in all other respects.  *Oxley* v. *Lane,* 35 N. Y. 340; *Henderson* v. *Henderson,* 113 N. Y. 1; *City of Phila.* v. *Girard's Heirs,* 45 Pa. 9; *Outland* v. *Bowen,* 115 Ind. 150; *Johnson* v. *Preston,* 226 Ill. 447 (*supra*); *Bradley* v. *Peixoto,* 3 Ves, Jr. 324;  Gray: Rule against Perp. § 247; 24 Am. & Eng. Ency. of Law, p. 872 (2d ed.).

We therefore hold, in reply to the second question, that clauses "Second" and "Third" of the will of said Katharine C. Welling, as amended by the "First" clause of the codicil, are valid as devises of the real estate therein mentioned, free from the restraint upon alienation.

In view of the foregoing, the third question needs no answer.

*John Henshaw,* for complainants.

*Gardner, Pirce & Thornley, Rathbone Gardner, Charles R. Haslam,* for respondents William Brenton Welling and Richard W. G. Welling.

*Green, Hinckley & Allen,* for Emily Welling Hayes and J. Noble Hayes.